UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  JOSEPH A. STRAUB, | : | Case No. 11-22174REF |
| Debtor | : | Chapter 7 |
| DAN ACEVEDO, ET AL., | : | |
| Plaintiffs | : | |
| v. | : | Adv. No. 12-0654 |
| JOSEPH A. STRAUB, | : | |
| Defendant | : | |

# STATEMENT IN SUPPORT OF ORDER ENTERING JUDGMENT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANT

## I.  INTRODUCTION

This case is straightforward in its facts and in pinpointing the single dispositive issue. Although it is a bit unusual for a bankruptcy court to venture into the realm of the professional responsibility of an attorney, it is critical to my resolution of the dispute now at hand. An attorney's representation of his clients, the possible termination of that representation, and the effect of termination on counsel's duties to inform former clients are what I face in this matter.

Most of the facts in this case are not contested. Plaintiffs' counsel in this adversary proceeding ("Counsel") represented a number of class action plaintiffs who received a substantial joint judgment in a state court class action proceeding. Five of the class action plaintiffs were named and were formally designated as representatives of the class. The remainder of the class action plaintiffs were unnamed (in the caption and pleadings) members of the class. Those latter, unnamed plaintiffs are the Plaintiffs in this litigation.

After receiving the state court class action judgment and learning that assets of Debtor/Defendant were potentially being executed upon by other creditors, Counsel commenced this Chapter 7 bankruptcy case on August 16, 2011 by filing an involuntary petition against Debtor/Defendant on behalf of three of the named, representative class plaintiffs. Counsel also filed at least one document in this bankruptcy case on behalf of all five named, representative class plaintiffs.

The sole contested issue is whether, when Counsel received actual notice of the filing of Debtor/Defendant's bankruptcy case,[1] counsel's knowledge was attributable to the unnamed state court class plaintiffs. The parties agree that the answer for the five named representatives of the class plaintiffs, all of whom participated in Debtor/Defendant's bankruptcy case through Counsel, is

---

[1] Counsel received notice of the filing of this bankruptcy case on August 16, 2011, when Counsel himself filed the involuntary bankruptcy petition against Debtor/Defendant.

2

unequivocally, "Yes." They would therefore be barred from participating in this dischargeability adversary proceeding. The answer for the unnamed class plaintiffs is more difficult and constitutes the subject matter of this dispute.[2] This Statement constitutes my findings of fact and conclusions of law resolving this matter.

## II. BACKGROUND

I will limit the background to a list of uncontested facts and other occurrences that are relevant and necessary to resolution of the narrow issue I face, as described above.

Both parties to this dispute agree with the following facts:[3]

### A. State Court Actions

(1) On December 29, 2005, Counsel filed the class action complaint against Debtor/Defendant in the Northampton County Court of Common Pleas docketed at Tarn v. Straub, Docket Number C0048 CV 2005-09482;

---

[2] Debtor/Defendant has conceded that if I find this Complaint timely filed and reach the merits of this dischargeability proceeding, the debt in issue is nondischargeable under 11 U.S.C. §523(a). See Notes of Testimony of November 25, 2013 trial, docketed on January 23, 2014 (docket entry 58) at p. 45, lines 15-18.

[3] The parties have not expressly agreed, through a stipulation or otherwise, to some of these facts. All of the facts, however, are either expressly conceded by both parties or contained in an exhibit, such as the Stipulation of Facts admitted into evidence as Joint Exhibit 1, or the official dockets in the main bankruptcy case or this adversary proceeding, of which I may take judicial notice. See Maritime Elec. Co. v. United Jersey Bank, 959 F. 2d 1194, 1200, n. 3 (3d Cir. 1991).

(2) On January 18, 2007, the Northampton County court granted the class action plaintiffs' motion for class certification and certified the five named class plaintiffs as class representatives;[4]

(3) The named class plaintiffs, represented by Counsel in the Northampton County class action proceeding, consisted of five representative plaintiffs: David Jones; Victor Berkey; Joseph Ali; Michael Tarn; and Jesse Packel;

(4) The unnamed class plaintiffs, also represented by Counsel in the Northampton County class action proceeding, consisted of approximately 71 other plaintiff class members;

(5) A jury verdict was entered on December 10, 2010, in the amount of $635,278.23, in favor of the class of named and unnamed plaintiffs and against Debtor/Defendant and other defendants in the Northampton County class action proceeding;

(6) At some point, Counsel received a telephone call from Joseph Ali, one of the five named plaintiffs in the Northampton County class action suit, advising him that Defendant/Debtor's business partner, Keith W. Oldt, transferred

---

[4] In its January 18, 2007 Order, the Northampton County court granted Counsel's motion on behalf of the plaintiffs for class certification, certified the five named plaintiffs as class representatives (¶ 4), and ordered that Counsel shall serve as class counsel (¶ 5).

4

property to members of his family. Joint Exhibit 1, Stipulation of Facts, ¶11. On January 6, 2011, Victor Berkey, one of the five named class plaintiffs, filed a complaint in the Lehigh County Court of Common Pleas against Kevin W. Oldt, his now deceased wife, Sandra S. Oldt, and Christine E. Oldt[5] seeking to avoid certain transfers of property as fraudulent conveyances. Joint Exhibit 1, Stipulation of Facts, ¶2, as supplemented by Stipulation filed on December 16, 2013 (docket entry 55), ¶3. Counsel represented Mr. Berkey in this proceeding. Id.;

(7) On January 7, 2011, the Northampton County court entered judgment on the jury verdict in favor of the class plaintiffs (both named and unnamed) and against Debtor/Defendant (and other defendants), in the amount of $635,278.23;

(8) On March 10, 2011, Counsel petitioned the Northampton County court for an award of fees and expenses;[6]

(9) On May 5, 2011, the state court added additional damages of $307,007.30 to the original judgment amount, making the final amount of the judgment $942,130.53;

---

[5]    The relationship of Christine E. Oldt to Kevin and Sandra Oldt was not explained by either party.

[6]    I was unable to find, in the state court docket, an order approving Counsel's fees and expenses, although it appears from that docket that Counsel's petition was approved on May 5, 2011, in the amount of $307,007.30 of attorneys' fees and out of pocket expenses.

5

(10) Class action representative plaintiff Mr. Ali received a distribution check dated May 7, 2012 in the amount of $10,036.13 from the trustee for the bankruptcy estate of Debtor/Defendant's co-defendant, Straub Enterprises, Inc.;

(11) On May 30, 2012, Counsel petitioned the Northampton County court for leave to negotiate the check to Counsel's law firm;

(12) On May 30, 2012, the Northampton County court granted Counsel's petition and authorized him to negotiate the check, take the funds for his law firm, and apply the funds against $36,074.55 of out of pocket expenses previously awarded to Counsel and his firm for representing the class plaintiffs in the Northampton County class action proceeding;

(13) The jury verdicts (of liability and damages) and the Northampton County court's entry of judgment together determined that Debtor/Defendant committed fraud, deceit, and misrepresentation when he denied the earned compensation that should have been paid to his employees, most of whom are the Plaintiffs in this litigation;[7]

---

[7]  Although the state court jury determinations and judgment are arguably a legal conclusion, it is a fact that the jury and judge made these findings against Debtor/Defendant.

6

(14) The Northampton County court judgment established controlling legal and factual issues that would be applicable to this case through collateral estoppel (issue preclusion);[8] and

(15) The Northampton County court judgment established the elements that would be required for entry of judgment in favor of Plaintiffs and against Debtor/Defendant, to prevent the discharge of the debt owed to Plaintiffs by Debtor/Defendant.[9]

## B. Bankruptcy Case (Case No. 11-22174)

(1) On August 16, 2011, Counsel filed the petition for involuntary bankruptcy against Debtor/Defendant on behalf of three of the named plaintiffs as petitioners;[10]

(2) On February 3, 2012, Counsel filed Debtor's Schedule F (non-priority, unsecured creditors) on behalf of the three petitioning creditors plus the two other named, representative class plaintiffs, Mr. Tarn and Mr. Packel, as unsecured creditors. Counsel stated the aggregate amount of their claim was

---

[8] The status of the state court decision as collateral estoppel is arguably a legal conclusion. But it is a fact that the jury and judge made the findings against Debtor/Defendant. Regardless, Debtor/Defendant concedes that he is bound by the findings of the Northampton County court and that the debt is nondischargeable under 11 U.S.C. §523(a). See notes 2 and 7, supra.

[9] See notes 2 and 8, supra.

[10] Counsel also listed specific amounts owed to the three petitioning creditors as $58,330.03 for Mr. Jones, $23,325.88 for Mr. Ali, and $19,159.21 for Mr. Berkey.

$942,130.53, which was the total, aggregate amount of the judgment in favor of the entire class of plaintiffs, both named and unnamed, in the Northampton County litigation;

(3) On April 4, 2012, this Court issued notice to all parties in this Chapter 7 bankruptcy, including Counsel, of the date of the Section 341 creditors' meeting, May 18, 2012, and the deadline for objecting to discharge and filing dischargeability complaints, which was July 17, 2012;[11]

(4) Counsel failed to file, on behalf of the named representative class plaintiffs, a complaint objecting to the dischargeability of the debt owed to them by Debtor/Defendant before July 17, 2012;

(5) Counsel failed to file, on behalf of the Plaintiffs, a complaint objecting to the dischargeability of the debt owed to them by Debtor/Defendant before July 17, 2012;

(6) On September 17, 2012, I issued my standard Order granting Debtor/Defendant's discharge pursuant to Section 727 of the Bankruptcy Code;

(7) Two days later, on September 19, 2012, Counsel filed the Complaint initiating this adversary proceeding objecting to the dischargeability of

---

[11]  Pursuant to Federal Rule of Bankruptcy Procedure 4007(c), objections to Debtor/Defendant's discharge and complaints objecting to the dischargeabilityof debts were due to be filed on or before July 17, 2012, which was the date listed on the notice as the deadline.

8

the debt owed by Debtor/Defendant to Plaintiffs, all of whom were unnamed class plaintiffs in the Northampton County court class action proceeding;

(8) None of the named class plaintiffs in the Northampton County class action proceeding are included among Plaintiffs in this case, and they have not filed a complaint objecting to the dischargeability of the debt owed to them by Debtor/Defendant;

(9) Debtor/Defendant filed a motion to dismiss Plaintiffs' complaint in early November 2012, which dismissal motion I denied in an Order entered on November 27, 2012;

(10) Both parties filed summary judgment motions in late March and early April of 2014. I denied both motions in an Order entered on August 29, 2013, finding that the question whether Counsel represented Plaintiffs at the time he learned of Debtor/Defendant's bankruptcy filing is a question of fact; and

(11) I conducted a trial in this adversary Complaint on November 25, 2013, limited to the sole issue whether this Complaint was filed in a timely fashion. Post-trial briefs have been filed by the parties and the matter is now ready for disposition.

# III. <u>DISCUSSION</u>

Because Debtor/Defendant concedes that the debt owed to Plaintiffs is nondischargeable under 11 U.S.C. §523(a),[12] the only issue before me is whether Plaintiffs' Complaint was filed in a timely fashion. The answer to this question depends on whether notice to Counsel of the filing of this bankruptcy case binds Plaintiffs, which in turn, depends on whether Counsel represented Plaintiffs when he received notice of Debtor/Defendant's bankruptcy filing.

## A. <u>Did Notice to Counsel of the Filing of the Bankruptcy Case Bind Plaintiffs and Render Their Complaint Untimely?</u>

The Third Circuit addressed this question in <u>Maldonado v. Ramirez</u>, 757 F.2d 48, 51 (3d Cir. 1985) and concluded that notice to an attorney will only bind the creditor "'if the attorney received knowledge of the case while representing the creditor in enforcing his claim against the debtor.'" <u>Id.</u> quoting Collier on Bankruptcy, ¶523.13 (15th ed. 1984). The Court cautioned, however, that "[g]enerally, ... an attorney's representation of a party in one action does not make the attorney an agent for the party in an unrelated case between the same parties." <u>Id</u>. Likewise, notice received by an attorney after he ceased representing the creditor will not bind the creditor and will not bar the creditor's dischargeability

---

[12]   <u>See</u> note 2, <u>supra</u>.

10

complaint even though it was filed after the bar date. Maldonado,757 F.2d at 51; Collier on Bankruptcy, ¶523.09[4](a) at 523-69.

## B. Guiding Principles of Professional Responsibility and Liability

The Restatement (Third) of the Law Governing Lawyers (1998) (the "Restatement") has been referred to, relied upon, and adopted as guiding (if not controlling) law by the United States Supreme Court and numerous federal and state courts in Pennsylvania. For example, Pennsylvania appellate courts have relied numerous times on the Restatement to provide guidance on issues involving the attorney-client relationship. See, e.g., Levy v. Senate of Pennsylvania, 34 A.3d 243, 248 (Pa. Commw. Ct. 2011), citing Gillard v. AIG Ins. Co., 15 A.3d 44, 57 (2011), and Gillard's citation to, "among other authority, [the] Restatement." (emphasis added.) The Levy court went on to follow the Court in Gillard, which "gave much attention to [the] Restatement." Levy, 34 A.3d at 253. The Levy court then expressed its own reliance on the Restatement as a useful approach to ruling on the attorney-client issue before it, quoting and analyzing the Restatement at length. Levy, 34 A.3d at 253 – 255. Accord In re Grand Jury, 705 F.3d 133, 151 (3d Cir. 2012) (looking to the Restatement as support for its consideration of an attorney-client privilege issue arising in Pennsylvania); and Emmanouil v. Roggio,

11

499 Fed. Appx. 195, 199 (3d Cir. 2012) (relying on the Restatement for its consideration of another attorney-client privilege issue arising in New Jersey).

The Justices of the United States Supreme Court periodically rely on the Restatement to provide guidance in matters relating to attorneys' conduct. A concurring opinion[13] of the Court examined, as the majority did, whether the failure of counsel to consult with her client regarding his desire to file an appeal of a criminal conviction constituted ineffective assistance of counsel. Roe v. Flores-Ortega, 528 U.S. 470 (2000). Justice Souter quoted with favor the Restatement, among other sources, as showing the standard of reasonable practice required of counsel. 528 U.S. at 491.

The following paragraphs from the Restatement provide guidance in resolving the issue before me.

> (1). [A] lawyer's actual authority to represent a client ends . . . as provided by contract or because the lawyer has completed the contemplated services.
>
> Restatement, §31(2)(e).
>
> (2). The course of dealing might not clearly indicate what services were contemplated in the representation or whether the lawyer has a continuing duty to advise the client. Such uncertainty could likely lead to clients assuming that they were still being represented. Because contracts with a client are to be construed from the client's

---

[13] Justice Souter wrote the concurring opinion for himself and Justices Stevens and Ginsburg.

viewpoint, the client's reasonable understanding of the scope of the representation controls.

> Restatement, §31, comment h.

(3). In terminating a representation, a lawyer must take steps to the extent reasonably practicable to protect the client's interests, such as giving notice to the client of the termination.

> Restatement, §33(1).

(4). Following termination of a representation, a lawyer must take reasonable steps to convey to the former client any material communication the lawyer receives relating to the matter involved in the representation.

> Restatement, §33(2)(c).

(5). [I]f the client is threatened with an imminent deadline that will expire before new counsel can act, the lawyer must take reasonable steps either to extend the deadline or comply with it.

> Restatement, §33 comment b.

(6). After termination a lawyer might receive a notice, letter, or other communication intended for a former client. The lawyer must use reasonable efforts to forward the communication.

> Restatement, §33 comment h.

(7). A lawyer has no general continuing obligation to pass on to a former client information relating to the former representation. . . . Whether such an obligation exists regarding particular information depends on such factors as the client's reasonable expectations . . . [and] the evident significance of the information to the client.

> Restatement, §33 comment h.

Turning first to Section 31(2)(e) of the Restatement, I note that no fee agreements were executed by Counsel and the unnamed class plaintiffs. The only fee agreements that exist are agreements with the named plaintiffs, each of which is captioned "Employment Agreement." The Employment Agreements were executed by Counsel and each of the five named representative class plaintiffs. While no individual fee agreements exist between Counsel and the unnamed class plaintiffs, the January 18, 2007 order entered by the Northampton County court granting Counsel's motion for class certification certifies the five named class members as the class representatives. I therefore find that, in the absence of written fee agreements between the unnamed class plaintiffs and Counsel, the Fee Agreements executed by the five named representative class plaintiffs govern the relationship between Counsel and the unnamed class plaintiffs. These Fee Agreements provide, in pertinent part, that

> [The client] agree[s] to pay an attorney fee of 40% of whatever recovery [Counsel for Plaintiffs] is able to obtain on my behalf from any responsible party and/or insurance company. In consideration thereof, [Counsel for Plaintiffs] agrees to litigate this matter to verdict, if necessary, and to file and pursue and all appeals that we may direct be filed in the aftermath of such litigation. Such consideration also includes responding to any and all appeals that may be filed by other parties in the aftermath of such litigation. Accordingly, the stated consideration includes all appellate functions that may be necessary in the aftermath of successful or unsuccessful litigation at the trial court level. ...
>
> Other than those services and claims specified herein, this agreement pertains to no other claims or causes of action, which must be

> addressed under a separate contract in the event I request that such services be rendered.

Fee Agreement, ¶¶2, 6, attached as Tab 11 to Joint Exhibit 1. Based on the Fee Agreements, the scope of Counsel's representation of the class plaintiffs was limited to litigating the Northampton County class action proceeding to verdict and handling any appeals of the verdict that might be filed. Under the terms of the Fee Agreements, therefore, Counsel's representation of the class plaintiffs was limited to, and ceased upon, entry of the verdict in the Northampton county class action proceeding, because no appeal was taken.

Furthermore, Counsel had no contact or communication with any of the unnamed class Plaintiffs after entry of the liability verdict on March 20, 2010. Joint Exhibit 1, Stipulation of Facts, ¶14. David Jones, one of the named representative class plaintiffs, testified that he was the lead plaintiff in the Northampton County class action lawsuit and that he was the person who served as the sole point of contact with Counsel. Mr. Jones elaborated that he was the person who met with Counsel and gathered and explained information and documents for him. N.T. November 25, 2012 trial at 25-26. He was also the only plaintiff to testify before the Northampton County Court during the hearing on the motion for class certification. Id. at 26. Mr. Jones testified, during the trial before me, that at his insistence, the state court action filed on January 6, 2011 in Lehigh County against Debtor/Defendant's business partner seeking to avoid certain transfers

15

between Debtor/Defendant's business partner and his family members was never certified as a class action. Id. at 32-3. This explains why the Lehigh County case was never certified as a class action despite the fact that the caption of the Lehigh County complaint named the plaintiff as "Victor Berkey, on behalf of himself and others similarly situated." At Mr. Jones' insistence, despite this caption, Counsel never filed a motion for class certification in the Lehigh County case. All of Mr. Jones' testimony is consistent with the fact that Counsel's representation of the class action plaintiffs was limited in scope to representing the class plaintiffs through verdict (and appeal, if any) in the Northampton County class action proceeding and ceased when the verdict was entered in the Northampton County action, because no appeal was taken.

Section 31, comment h of the Restatement deals with the impact a course of dealing might have on the type of services contemplated in the representation and a lawyer's continuing duty to advise a client. It also discusses the importance of the client's reasonable understanding of the scope of the representation when the scope of the representation is unclear. I first note that no evidence was introduced about the course of dealing between Counsel and the unnamed class plaintiffs or about the unnamed class plaintiffs' understanding of the scope of the representation they were to be afforded by Counsel. For this

reason, any finding by me regarding either factor would be nothing more than conjecture and speculation.

In addition, the Fee Agreements clearly identify the scope of Counsel's representation as continuing through verdict and appeal, if any, of the Northampton County class action proceeding. The Fee Agreements further provide that they "pertain [sic] to no other claims or causes of action, which must be addressed under a separate contract in the event [the client] request[s] that such services be rendered." I find this language unambiguous and sufficient to identify and narrow the scope of Counsel's representation of the class plaintiffs to representation through verdict and appeal of the Northampton County class action proceeding, if any appeal is filed. Because the scope of the representation is clear and unambiguous on the face of the Fee Agreements, I have no need to resort to course of dealing or the unnamed class plaintiffs' reasonable understanding of the scope of the representation, even if such evidence existed (which it does not).

Finally, I note that the only evidence of a class plaintiff's understanding of the scope of the representation they were to be afforded by Counsel is the testimony of Mr. Jones, which is consistent with and wholly supports my finding that Counsel's representation of the class plaintiffs was

limited in scope to, and terminated upon, entry of the verdict in the Northampton County class action proceeding since no appeal of the verdict was filed.[14]

Restatement Section 33(1) notes that "a lawyer must take steps to the extent reasonably practicable to protect the client's interest, such as giving notice to the client of the termination." Although no evidence was presented regarding whether Counsel gave notice to the class plaintiffs that his representation had terminated, such notice could not have been reasonably practicable for 17 of the class plaintiffs. Debtor/Defendant never gave Counsel the addresses of these 17 unnamed class plaintiffs. See Joint Exhibit 1, Stipulation of Facts, ¶12. Regardless, Section 33(1) does not make notice a requirement of terminating representation. It merely suggests that notice may be appropriate to protect the client's interests, depending on the circumstances of each case. Based on the record before me, I find that proof of notice was not necessary given (1) the unambiguous language contained in the Fee Agreements defining the scope and length of the representation and (2) the absence of any evidence relating to the beliefs and expectations of the unnamed plaintiff class members.

---

[14] Unlike the unnamed class plaintiffs, the five representative class plaintiffs appeared in Debtor/Defendant's bankruptcy case through Counsel and were represented by him in this bankruptcy case. As a result, notice of Debtor/Defendant's bankruptcy case to Counsel is binding on the five representative class plaintiffs. Any complaint filed by the five named class representatives contesting the dischargeability of the debt owed to them by Debtor/Defendant would therefore be dismissed as untimely filed.

Restatement Section 33(2)(c) and comments b and h deal with a lawyer's duty to his former client following termination of the representation and do not assist in my determination whether, in fact, Counsel's representation of the class plaintiffs had terminated when he received notice of Debtor/Defendant's bankruptcy. To the extent these sections address Counsel's duty to notify former clients of information relating to the former representation, they are not applicable to this case. No evidence shows that Counsel failed to notify the class plaintiffs of any information pertaining to the former representation, which is limited under the Fee Agreements to obtaining a verdict in the Northampton County class action proceeding.

## IV. CONCLUSION

For these reasons, I find that Counsel's representation of the class plaintiffs was limited in scope and duration to litigating the Northampton County class action proceeding to verdict and handling any appeals of the verdict that might have been filed. As a result, Counsel's representation of the class plaintiffs ceased upon un appealed entry of the verdict in the Northampton County class action proceeding. Because Counsel did not represent Plaintiffs at the time he filed the involuntary bankruptcy petition against Debtor/Defendant, Counsel's notice of

the filing of Debtor/Defendant's bankruptcy case did not bind the unnamed Plaintiffs. I find therefore that Plaintiffs' Complaint was filed in a timely fashion.

Finally, Debtor/Defendant concedes that if I find Plaintiffs' Complaint timely filed, the debt he owes to Plaintiffs is nondischargeable under 11 U.S.C. §523(a).[15] An Order entering judgment on the Complaint in favor of Plaintiffs and against Defendant/Debtor and finding the debt owed by Defendant/Debtor to Plaintiffs nondischargeable under Section 523(a) shall therefore be entered.

Date:  June 3, 2014

BY THE COURT

_____
Richard E. Fehling
United States Bankruptcy Judge

---

[15]  See note 2, supra.